IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA


PATTY JO TRAMBLE, )
)
        Plaintiff, )
)
)     CIV-13-377-F
v. )
)
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
   Security Administration, )
)
        Defendant. )


REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the

Complaint and filed the administrative record (hereinafter TR___), and the parties have

briefed the issues. The matter has been referred to the undersigned Magistrate Judge for

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it

is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits on May 3, 2010 (protective filing date), and

she alleged that she became disabled on December 20, 2008. (TR 122, 142). Plaintiff

alleged disability due to diabetes, high blood pressure, depression, neuropathy, spinal narrowing, and nerve problems. (TR 146). She stated that she did not work in 2006 or 2007, that she previously worked as a copper assembler, sewer, assisted living aide, cook, and food prep worker, and that she stopped working on December 20, 2008, because she was "laid off due to lack of work." (TR 146, 147, 152). She has an eleventh grade education. (TR 147).

Plaintiff testified (TR 38-54) at an administrative hearing conducted on August 4, 2011, that she worked for a few months in 2009 as a sewer but that she quit working when she caught a cold or the flu. She testified she was unable to work due to diabetic neuropathy which caused numbness, tingling, and burning pain in her hands and feet, a sciatic nerve problem, bulging discs in her spine, and depression. She did not use an assistive device for walking, and she admitted she had not been compliant with her prescribed medications and treatment because it was "hard" to be compliant with her diabetic medications and to follow a diabetic diet and sometimes she could not afford the medication.

On a typical day, Plaintiff testified that she could wash dishes, make her bed, do laundry, drive to the grocery store, dress and care for herself, read, watch television, visit with her grandchildren, take car rides with her spouse, and lift 15 pounds. She described bowel incontinence for which she was being treated by a gastroenterologist and which caused sleep disturbances. Plaintiff testified she was taking medications for depression, high cholesterol, diverticulitis, high blood pressure, diabetes, and pain, and that the medications caused side effects of weakness, numbness, confusion, nausea, and occasional headaches. A

vocational expert ("VE") also testified at the hearing.

Plaintiff's sister completed a third-party function report in June 2010 in which she stated that Plaintiff needed help with virtually all activities except for personal care and food/clothing shopping. (TR 180-183).

In a decision rendered October 25, 2011, Administrative Law Judge Shepherd ("ALJ") found that Plaintiff had not engaged in substantial gainful activities from her alleged onset date of December 20, 2008, through the date on which she was last insured for disability insurance benefits, June 30, 2011. (TR 21). Following the well-established sequential evaluation procedure adopted by the agency, the ALJ found at step two that Plaintiff had severe impairments due to diabetes mellitus with neuropathy, hypertension, obesity, and back disorder. (TR 21). With respect to Plaintiff's medically determinable impairment of bipolar disorder, unspecified, the ALJ found that this impairment had not caused more than minimal functional limitations and was therefore nonsevere. (TR 21-23).

At step three, the ALJ found that Plaintiff's impairments did not satisfy or medically equal the medical findings for an impairment deemed disabling *per se* under the agency's Listing of Impairments. (TR 23). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") despite her impairments to perform the following work-related activities:

> [T]hrough the date last insured, the claimant had the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb

ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant can climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger.

(TR 23). Given this RFC for work and relying on the VE's testimony concerning the demands of Plaintiff's previous jobs, the ALJ found that Plaintiff was capable of performing her past relevant work as a copper assembler. Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on June 30, 2011. (TR 33, 124, 139). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on June 30, 2011. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Obesity

Plaintiff contends that the ALJ erred by not considering limitations resulting from Plaintiff's severe impairment of obesity in the step four determination. The Commissioner responds that no error occurred with respect to the ALJ's consideration of this impairment. In the alternative, the Commissioner responds that any error in the ALJ's evaluation of this impairment was harmless.

Social Security Ruling ("SSR") 02-1p requires an ALJ to consider the effects of obesity when assessing a claimant's RFC and advises that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p, "Titles II & XVI: Evaluation of Obesity," 2000 WL 628049, *1 (Sept. 12, 2002). An ALJ may "not make assumptions about the severity of functional effects of obesity combined with other impairments," but must "evaluate each case based on the information in the case record." Id. at *6.

In addition to obesity, the ALJ found that Plaintiff had severe impairments due to

diabetes with neuropathy, hypertension, and a back disorder. In connection with the step four RFC finding, the ALJ discussed in the decision Plaintiff's testimony, her sister's statements concerning Plaintiff's functional limitations, and the objective medical evidence, including the results of MRI testing of Plaintiff's lumbar spine, the opinions of agency medical consultants concerning Plaintiff's RFC for work, and the progress notes of her treating physician who prescribed medications for diabetes, neuropathy, and back pain.

Plaintiff's treating physician, Dr. Click, noted on several occasions that Plaintiff appeared "overweight." 261, 265, 268, 296, 343, 351). Dr. Click also noted on numerous occasions in his progress notes that Plaintiff was non-compliant with prescribed treatment for her diabetes, which included weight loss and exercise, and that Plaintiff's back pain and neuropathy improved with medications. In fact, on August 3, 2010, Dr. Click noted that Plaintiff reported her back pain had greatly improved to the extent that she was no longer taking pain medication. (TR 296). She reported in November 2010 that her neuropathy pain had improved on medication. (TR 342). She was then taking pain medication only "as needed." (TR 342). Further, in March 2011, Dr. Click noted that Plaintiff had refused a prior referral to a pain management clinic for her history of lumbosacral neuritis, and again noted she had been noncompliant with followup treatment and medication requirements to treat her diabetes. (TR 350). Nothing in the evidence in Plaintiff's medical record indicates that her obesity exacerbated her back impairment beyond that considered by the ALJ, and Plaintiff does not point to any such evidence. The RFC assessment by the agency's medical consultants supports the ALJ's RFC finding for a limited range of light work. Although

Plaintiff described very limited activities, and her sister also stated she performed very limited activities, the ALJ considered these subjective statements and found them to be only partially credible. There is nothing in the record to support Plaintiff's assertion that her obesity, either considered alone or in combination with her other impairments, precluded her from performing work within the exertional demands set forth in the ALJ's RFC finding. Under these circumstances, the ALJ did not err in failing to consider Plaintiff's obesity at step four, and, in any event, any error in the ALJ's failure to expressly consider Plaintiff's obesity at step four was harmless.

IV. Credibility

Plaintiff contends that the ALJ's credibility determination is flawed. The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). An ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In this case, the ALJ considered relevant factors in evaluating Plaintiff's credibility, including the claimant's daily activities, her medications and the effectiveness of those medications, her statement that she was laid off from her last job due to lack of work rather than due to her alleged impairments, the objective medical evidence which the ALJ properly reasoned did not substantiate her subjective statements or the subjective statements of her sister concerning her physical limitations, the absence of objective medical evidence that documented or substantiated her hearing testimony regarding side effects[1] of medication, the absence of objective medical evidence of a condition that would explain her complaints of bowel incontinence, Plaintiff's reports to treating medical providers that medication improved her diabetic neuropathy, her reluctance to enter pain management, the mild/moderate findings on MRI noted by her treating physician, and her lack of compliance with treatment measures. (TR 24-25). See SSR 96-7p, 1996 WL 374186, at * 3 (listing relevant factors); Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p). See also 20 C.F.R. § 416.929(c)(3)(listing factors relevant to symptoms that may be considered by ALJ). The record reflects that Plaintiff was repeatedly noncompliant with her diabetic medications and treatment regimen. She reported in August 2010 that he back pain was greatly improved, and she later reported that she was taking pain medication only "as needed" for back pain. (TR 296, 342).

---

[1]Plaintiff points to evidence in the medical record that Plaintiff reported side effects in 2008 and 2010 from a medication, Lyrica®. However, Plaintiff was not taking this medication at the time of the hearing. (TR 44-46).

Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10ᵗʰ Cir. 2012). The ALJ provided extensive and pertinent reasons for discounting Plaintiff's credibility and the credibility of her sister's subjective statements. No error occurred in this regard.

Because there is substantial evidence in the record to support the Commissioner's decision, and no error occurred in the ALJ's evaluation of the evidence, the Commissioner's decision should be affirmed.


## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ April 14ᵗʰ , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10ᵗʰ Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10ᵗʰ Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this _____25th_____ day of ____March____, 2014.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE